UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRUCE W. BLAIR, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> JACKIE CRAWFORD, *et al.,* ) <br> ) <br> Respondents. ) <br> _____/ | 3: 97-cv-0649-HDM-VPC <br><br> **ORDER** |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a state prisoner, is represented by counsel. The case is before the court for resolution of petitioner's motion for leave to conduct discovery (Doc. 119), petitioner's motion for summary judgment (Docket #125), and the merits of the petition.

**PROCEDURAL HISTORY**

Petitioner is incarcerated pursuant to a corrected judgment filed July 11, 1990, after a jury trial in the Nevada Second Judicial District Court. (Docket #79, Exhibit 27.) He was convicted of burglary (count 1), two counts of sexual assault with the use of a deadly weapon (counts 2 and 3), and attempted sexual assault with the use of a deadly weapon (count 4). *Id*. Petitioner was

sentenced as follows: count 1 - five years in prison; count 2 - two consecutive terms of life in prison with the possibility of parole after five years; count 3 - two consecutive terms of life in prison, with the possibility of parole after five years; and count 4 - two consecutive terms of ten years in prison. *Id*. The sentences on the four counts run concurrently to each other. *Id.*

Petitioner filed a direct appeal to the Nevada Supreme Court. (Docket #79, Exhibit 28.) The Nevada Supreme Court dismissed the appeal on June 27, 1991. (Docket #79, Exhibit 34.)

On June 26, 1992, petitioner filed a petition for post-conviction relief. (Docket #79, Exhibit 37.) On August 16, 1993, following an evidentiary hearing, the Nevada District Court denied the petition. (Exhibits 40-41.) Petitioner appealed the denial of his petition. (Exhibits 43, 47 and 49.) On November 7, 1996, the Nevada Supreme Court dismissed the appeal. (Exhibits 51 -53.)

Petitioner filed the present action on November 18, 1998. On November 28, 1998, the Magistrate Judge entered a report and recommendation on a motion to dismiss, finding that the petition included claims which had not been exhausted in state court. (Docket #19.) The Magistrate Judge granted petitioner the option of voluntarily dismissing his petition and returning to state court to exhaust his unexhausted claims, or amending his petition to abandon the unexhausted claims. On December 17, 1998, petitioner filed a motion to voluntarily dismiss his petition. (Docket #20.) On December 23, 1998, the court granted petitioner's motion and dismissed his petition without prejudice. (Docket #21).

On January 12, 1999, petitioner filed in the Nevada Supreme court a *pro se* "Petition for Extraordinary Writ." (Exhibit 56.) The court denied the petition on February 10, 1999, and denied rehearing on March 30, 1999. (Exhibit 57, 59.)

On April 13, 1999, this court received another petition for writ of habeas corpus from petitioner, which was assigned case number 3:99-cv-0193-DWH-RAM. The court dismissed the petition with prejudice in an order entered October 20, 1999. (Docket #18, 3:99-cv-0193-DWH-RAM.) Petitioner appealed and on February 11, 2002, the United States Court of Appeals for the Ninth Circuit entered an order reversing the judgment of this court and remanding the case. (Docket

#44, 3:99-cv-0193-DWH-RAM.)

On February 28, 2002, petitioner filed a motion to reopen the present action. (Docket #22.) On April 12, 2002, the court entered an order resolving a variety of matters in this case, and appointing counsel for petitioner. (Docket #41.)

On April 18, 2002, the court entered an order staying case 3:99-cv-0193-DWH-RAM pending resolution of the motion to reopen this case. (Docket #46, 3:99-cv-0193-DWH-RAM.)

On September 4, 2002, the court entered an order reopening this case. (Docket #59.) On November 18, 2002, the court entered an order consolidating this case with case 3:99-cv-0193-DWH-RAM and designating the file in this case as the base file. (Docket #63.)

On April 28, 2003, petitioner filed a motion for leave to conduct discovery. (Docket #67.) On November 6, 2003, the court entered an order denying petitioner's motion on the ground that petitioner had not shown the claims on which he sought discovery were exhausted in state court. (Docket #74.) The denial of the discovery motion was without prejudice to petitioner reasserting his request for discovery if and when he was able to show that the claims upon which he sought discovery were exhausted.

Petitioner filed his third amended petition for writ of habeas corpus on March 9, 2004. (Docket #77.) Respondents filed a motion to dismiss on April 5, 2004. (Docket #81.) On November 8, 2004, the court entered an order granting respondents' motion to dismiss in part and denying it in part. (Docket #93.) The court granted the motion to dismiss as to grounds 1(c)(1-6), 1(d), 3, 4, 5, 6, 7, and 8 of the third amended petition on the ground that the grounds were unexhausted. *Id*. The court denied the motion to dismiss as to grounds 1(a), 1(b), 2, and 9. *Id*. The court granted petitioner thirty days to inform the court whether he wished to forever abandon his unexhausted claims and proceed only with his exhausted claims, or to dismiss his entire petition without prejudice in order to return to state court to exhaust his unexhausted claims. *Id*.

On January 18, 2005, petitioner filed a notice of his intent to return to state court to

3

1  exhaust his unexhausted claims. (Docket #96.)  On February 3, 2005, the court entered an order that
2  this case and its consolidated case 3:99-cv-0193-DWH-RAM were dismissed without prejudice and
3  directing the clerk to administratively close these cases without entering judgment. (Docket #98.)

4  Petitioner filed a second state habeas corpus petition in June 2005. (Docket #103-2,
5  Exhibit 73.)  Petitioner did not seek discovery.  The Nevada District Court dismissed the petition in
6  an order entered March 30, 2006. (Docket #103-20, Exhibit 81.)  Petitioner appealed and on May
7  17, 2007, the Nevada Supreme Court issued an order affirming the judgment of the district court.
8  (Docket #103-27, Exhibit 88.)

9  On June 27, 2007, petitioner filed a motion to reopen this case. (Docket #99.)  The
10 court granted petitioner's motion on November 28, 2007. (Docket #100.)  Petitioner filed his fourth
11 amended petition on January 28, 2008. (Docket #103.)  Respondents filed an answer on July 7,
12 2008, to which petitioner filed a reply on August 22, 2008. (Docket #113, #116.)

13 On April 8, 2009, petitioner filed the motion for leave to conduct discovery now
14 pending before the court. (Docket #119.)  Respondents filed an opposition to that motion on May
15 14, 2009, to which petitioner filed a reply on May 28, 2009. (Docket #123, #124.)

16 Petitioner filed a motion for summary judgment on ground four of the fourth amended
17 petition on July 30, 2009, requesting a hearing on the motion. (Docket #125.)  Respondents filed an
18 opposition on August 17, 2009, to which petitioner filed a reply on August 31, 2009. (Docket #126,
19 #127.)  This motion is also now pending before the court.

**LEGAL STANDARDS**

21 On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty
22 Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
23 enactment. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S.
24 1008, 118 S.Ct. 586 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting *Drinkard*
25 *v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997),
26 *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding

AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA, thus it is governed by its provisions.

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. *Williams v. Taylor*, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 123 S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in *Van Tran v. Lindsey*, 212 F.3d 1143 (9th Cir. 2000)); *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, at 1174 (citations omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); *Harris v. Nelson*, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769

(1995); *Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457 (1995); *Langford v. Day*, 110 F.3d 1380, 1388 (9th Cir. 1997).

**MOTION FOR LEAVE TO CONDUCT DISCOVERY**

Unlike in other civil litigation, a habeas corpus petitioner is not entitled to broad discovery. *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 1796-97 (1997); *Harris v. Nelson*, 394 U.S. 286, 295, 89 S.Ct. 1082, 1088-89 (1969). Although discovery is available pursuant to Rule 6, it is only granted at the court's discretion, and upon a showing of good cause. *Bracy*, 117 S.Ct. 1793, 1797; *McDaniel v. United States Dist. Court (Jones)*, 127 F.3d 886, 888 (9th Cir. 1997); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997); Rule 6(a) of the Rules Governing Section 2254. The Advisory Committee Notes to Rule 6 of the Rules Governing Section 2254 Cases emphasize that Rule 6 was not intended to extend to habeas corpus petitioners, as a matter of right, the Federal Rules of Civil Procedure's broad discovery provisions. Rule 6, Advisory Committee Notes (quoting *Harris*, 394 U.S. at 295, 89 S.Ct. at 1089).

In this case, petitioner seeks to conduct discovery as to grounds 1(c)(4) and (c)(5). In ground 1(c), petitioner contends that counsel was ineffective because he failed to conduct a proper pre-trial investigation or hire an investigator to find crucial evidence which would have made a difference in the trial and the verdict in this case. In grounds 1(c)(4) and (c)(5) specifically, petitioner argues as follows:

>   (4)   Defense counsel failed to examine or investigate the house key which the victim alleged was taken in an auto burglary of her vehicle and was used to enter her home. Since the victim could not identify Blair, the State needed to connect the sexual assault to an auto burglary. In Opening Statement, for instance, the prosecutor told the jury, "because he was arrested for auto burglary and because a series of auto burglaries had occurred in that area and it appeared that entry was made into Kayte's house by a key taken out of her automobile since her car had also been burgled that night as well . . ." Ex. 16, p. 8. The prosecutor elicited testimony from the victim that there were no signs of forcible entry and she found the spare key on the floor after the assault. She testified that the spare key had been kept in her car in the console. Ex. 16, p. 45. There are no police reports which support the finding of the key, no evidence that the key found actually fit the lock of the victim's room and the victim provided conflicting information to an investigator for the Federal Public Defender as to the location of the key, stating that the key was not in the console of the car but rather was kept in the wheel well. Ex. 68. Because this was a wholly circumstantial case, and the prosecutor relied heavily upon the characterization of

Blair as an auto burglar, the failure of defense counsel to determine whether the key which was found actually could have been the method of entrance, was highly prejudicial.

(5)   Defense counsel failed to interview the victim prior to trial. No one from the defense contacted the victim and the victim has advised that she would have talked to defense counsel, in fact, she "would have welcomed it." Ex. 68. An interview of the victim would have revealed the process that was used to insure that the victim erroneously identified Blair as her assailant. For instance, at trial, the victim stated that she didn't provide the crucial detail about her assailant's penis until two weeks later (after Blair had been arrested and examined by the Detective) because "[t]here was too much else going on [the night of the assault]" Ex. 16, p.48. Had he interviewed the victim, he would have learned what the victim discussed with the Detective when she met with him two days after the assault and what was discussed in her "daily contact" with the Detective. Ex. 6, p. 20-21. Had defense counsel adequately prepared for the cross-examination of this victim, he would have learned that although the victim's statement contains no description of the height or weight of the assailant, Detective Frankenhouser, on February 20, 1990 said that the victim described her assailant as 5'7" to 5'10." Ex. 67, p. 17. Yet at trial, she said the assailant was 5'9" "at the tallest" but 5'7" was the height that "came to her at first" because he was her size, which is 5'7". Ex. 16, p. 88. Had defense counsel interviewed the victim, he would have learned that the victim was surprised when she first saw Blair in the courtroom that he was so small. Ex. 68. Had the lawyer interviewed the victim, he would have learned that she not only prepared witnesses for trial but she has lectured to the Nevada Trial Lawyers Association on the "Courtroom as Theater," something the jury should have known.

Petitioner also seeks discovery as to grounds six and seven of the fourth amended complaint. In ground six, petitioner contends that the destruction of exculpatory evidence violated his sixth and fourteenth amendment right to due process. In support of this contention, petitioner argues as follows:

Latent fingerprints were obtained from the headboard of the victim's bed. For over ten years, the prints were kept by the Washoe County Sheriff's Department. Shortly after the federal petition was filed, the fingerprints were destroyed. No notice was provided to Blair and the evidence is now forever lost. The latent prints could provide evidence which would exonerate Blair but a re-examination has been made impossible due to the deliberate actions of the State. The destruction of the evidence violates the constitutional rights of Blair to due process as set forth in Kyles v. Whitley, 514 U.S. 419, 437 (1995), Giglio v. United States, 405 U.S. 150, 153-154 (1972), and other cases following Brady v. Maryland, 373 U.S. 83 (1963).

In ground seven, petitioner contends that the failure to disclose police reports containing critical information relevant to the identification of the perpetrator violated petitioner's sixth and fourteenth amendment right to due process. Specifically, petitioner argues that the prosecutor failed to disclose certain police reports and results of a polygraph examination to trial

7

counsel.

In *Sherman v. McDaniel*, 333 F.Supp.2d 960 (D.Nev. 2004), a habeas petitioner sought discovery, *inter alia*, on his claim that his trial attorneys were ineffective for failing to conduct adequate investigation regarding his case. This court rejected petitioner's request, explaining as follows:

> This Court will not grant the sort of wide-ranging discovery sought by petitioner without a showing that he has exhausted in state court, and has not procedurally defaulted, the claims on which his proposed discovery is based. To do so would tend to undermine the exhaustion requirement, and the doctrine of federal-state comity on which it rests. As the Supreme Court stated in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), superceded by statute as stated in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000): "The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings."

*Sherman*, 333 F.Supp.2d at 969-70.

After reviewing petitioner's claims, the court finds that petitioner has not demonstrated any basis for discovery. Rather, petitioner speculates about possibilities and, based on those speculations, claims prejudice. It is well-established that such reaching is insufficient to support discovery in these cases. *See Calderon v. United States Dist. Court*, 98 F.3d 1102, 1106 (9th Cir.1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation.") (citations omitted). Further, as set forth below, the court finds the grounds on which petitioner seeks discovery, grounds 1(c)(4) and (c)(5), 6 and 7, are procedurally defaulted and any discovery would therefore be moot. The court thus finds no basis for a hearing on this matter.

Accordingly, the court will deny petitioner's motion for leave to conduct discovery.

**MERITS OF PETITION**

Ground One (a) and (b)

In ground 1, petitioner contends that he was deprived of his sixth and fourteenth amendment rights to effective assistance of counsel. In ground 1(a), petitioner claims that counsel

was ineffective when he failed to file a motion in limine to prevent the prosecutor from introducing testimony that petitioner was incarcerated prior to and during trial. In ground 1(b), petitioner claims that counsel was ineffective for failing to file a motion in limine to prevent the introduction by the prosecutor of prior bad acts and crimes committed by petitioner. He also claims that counsel was ineffective for failing to object to the introduction of prior bad acts.

In addressing these claims in the appeal on petitioner's first state habeas corpus petition, the Nevada Supreme Court held as follows:

> This is an appeal from an order of the district court denying a petition for post-conviction relief. Appellant maintains that the district court erred in denying his petition without considering two claims of ineffective assistance of trial counsel that were raised in appellant's petition. In particular, appellant contends that the district court should have considered his claims that counsel was ineffective for failing to preclude the admission of prior crimes evidence and incarceration evidence at trial.
>
> We conclude that appellant's contention lacks merit. Appellant was afforded an evidentiary hearing on his post-conviction petition. The burden was incumbent on him to raise and address his ineffective assistance of counsel claims at this hearing. Furthermore, in this appeal, appellant has failed to make factual allegations that could arguably entitle him to relief on his ineffective assistance of counsel claims, see Strickland v. Washington, 466 U.S. 668, 687 (1994), and an additional evidentiary hearing is therefore not warranted. See Hargrove v. State 100 Nev. 498, 686 P.2d 222 (1984). The evidence of appellant's prior automobile burglaries was admissible pursuant to NRS 48.035(3), as this evidence placed appellant near the crime scene and explained that appellant gained entry to the victim's house by using the extra house key that had been in her automobile, which was burglarized. Additionally, although we have previously concluded that admission of incarceration evidence may be prejudicial, such evidence is harmless where, as here, the evidence of guilt is overwhelming. See e.g., Haywood v. State, 107 Nev. 285, 287, 809 P.2d 1272, 1273 (1991).

Exhibit 51 at 1-2. Petitioner has presented nothing to this court to demonstrate that the Nevada Supreme Court's adjudication of these claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The court therefore concludes that ground one(a) and (b) present no basis for habeas corpus relief.

Grounds 1(c), 1(d), 3, 5 and 8

In ground 1(c), petitioner contends that counsel was ineffective because he failed to conduct a proper pre-trial investigation or hire an investigator to find crucial evidence which would have made a difference in the trial and the verdict in this case. In ground 1(d), petitioner contends that counsel was ineffective because he did not object to the reasonable doubt instruction given. Ground 1(c) and ground 1(d) in the present petition correspond to ground 1(a) and (b) of petitioner's second state post-conviction petition. (Docket #103-3, Exhibit 73.)

In ground three of the present petition, petitioner contends that the reasonable doubt instruction given during trial violated his constitutional rights because it reduced the burden of proof on the prosecution. This ground for relief correlates to ground two of petitioner's second state post-conviction petition. (Docket #103-3, Exhibit 73.)

In ground five of the present petition petitioner contends that he was deprived of his constitutional right to effective assistance of appellate counsel. This ground for relief corresponds to ground four petitioner's second state post-conviction petition. (Docket #103-3, Exhibit 73.)

In ground eight of the present petition, petitioner contends that he was deprived of his constitutional right to due process due to the admission at trial of an eyewitness identification that was the product of impermissibly suggestive methods. This ground for relief corresponds to ground seven of petitioner's second state post-conviction petition. (Docket #103-3, Exhibit 73.)

In its order affirming the dismissal of petitioner's second postconviction petition for writ of habeas corpus, the Nevada Supreme Court held in part as follows:

> The district court dismissed Blair's claims one (ineffective assistance of counsel), two (unconstitutional reasonable doubt instruction), four (ineffective assistance of appellate counsel), and seven (unconstitutional identification procedure) as time-barred and successive. We conclude the district court did not err. Blair cites but fails to explain how the law-of-the-case doctrine is relevant to overcoming a procedural bar. He argues good cause based on the ineffective assistance of his appellate and postconviction counsel, but good cause must be the result of "an impediment external to the defense," and Blair was not entitled to effective assistance of postconviction counsel. This court has consistently applied procedural default rules, and Blair's argument to the contrary, even it true, would not establish good cause. Blair refers in passing to actual innocence and a fundamental miscarriage of justice, but does not make a sufficient showing that the is factually innocent.

(Docket #103-27, Exhibit 88, p. 3.)(Citations omitted.)

"Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts but the state courts disposed of the claim on procedural grounds, instead of on the merits. A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The *Coleman* Court stated the effect of a procedural default, as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. *See Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir. 2003).

In the present case, the Nevada District Court and Nevada Supreme Court each expressly relied on NRS 34.726 in denying grounds 1(c), 1(d), 3, 5, and 8 when petitioner returned to state court to exhaust those claims. (Docket #103-20, Exhibit 81; Docket #103-27, Exhibit 88.) The Ninth Circuit Court of Appeals has held that the timeliness bar applied in this case - - NRS 34.726 - - is an independent and adequate state ground for finding procedural default. *Loveland v. Hatcher*, 231 F.3d 640, 642 (9th Cir. 2000).

Petitioner argues at length that he can demonstrate good cause for his failure to raise these claims in his first state post-conviction habeas corpus petition. He claims that he raised them in his petition submitted to the Nevada District Court, but that his appointed counsel abandoned these claims on appeal without his consent. This argument is unavailing, because petitioner is not entitled to effective assistance of counsel on post-conviction habeas corpus proceedings. Further, even if petitioner could demonstrate good cause for his failure to bring these claims earlier, he has

made no showing of prejudice, as is required to overcome the procedural default. Accordingly, this court finds that petitioner's grounds 1(c), 1(d), 3, 5 and 8 are procedurally barred.

Ground Two

In ground two, petitioner contends that the prosecutor committed misconduct during his trial in violation of his fifth and fourteenth amendment rights to due process. Petitioner claims that the prosecutor introduced prejudicial and inadmissible evidence to the effect that he was an auto burglar and had been arrested and incarcerated for that crime prior to and during the trial of this case. In addressing the admission of petitioner's prior bad acts and the admission of incarceration evidence, the Nevada Supreme Court found as follows:

> The evidence of appellant's prior automobile burglaries was admissible pursuant to NRS 48.035(3), as this evidence placed appellant near the crime scene and explained that appellant gained entry to the victim's house by using the extra key that had been in her automobile, which was burglarized. Additionally, although we have previously concluded that admission of incarceration evidence may be prejudicial, such evidence is harmless error where, as here, the evidence of guilt is overwhelming. See, e.g., Haywood v. State, 107 Nev. 285, 287, 809 P.2d 1272, 1273(1991).

Exhibit 51 at 1. The court has finds that petitioner has presented nothing to demonstrate that the Nevada Supreme Court's adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The court therefore concludes that ground two presents no basis for habeas corpus relief.

Ground Four

In ground four, petitioner contends that he was deprived of his constitutional rights to effective assistance of counsel and due process of law because his appellate counsel labored under an actual conflict of interest. Ground four correlates to ground three of petitioner's second state post-conviction petition. (Docket #103-3, Exhibit 73.) On July 30, 2009, petitioner filed a motion

for summary judgment as to ground four of the fourth amended petition. (Docket #125.)

Petitioner's entire statement of ground four is as follows:

> Prior to trial in this matter, on February 28, 1990, the Washoe County Public Defender was relieved as counsel for Blair. The court found "that a conflict of interest exists." The Washoe County Public Defender was "relieved from further representation." Ex. 5. Inexplicably, on June 15, 1990, the court ordered that "henceforth, the Washoe County Public Defender shall represent the above-named Defendant in all actions and proceedings . . ." Ex. 24. The record does not reveal any explanation to or waiver by the defendant of the conflict of interest which existed just four months earlier.
> Under clearly established law, petitioner was entitled to effective representation by an attorney free from any conflicts of interest, and unhampered by any competing loyalties, however slight. The improper deprivation of Mr. Blair's right to conflict-free counsel was prejudicial per se and no showing of specific prejudice is required. It is impossible to measure the precise effect on petitioner's defense, since the prejudice arises not from what counsel did but from what counsel failed to do. The error is necessarily substantially injurious to the petitioner's constitutional right to effective assistance of counsel on appeal. As a result of the conflict of interest, Blair was essentially unrepresented on his direct appeal.

In its order affirming the dismissal by the Nevada district court of petitioner's second state habeas corpus petition, the Nevada Supreme Court held as follows:

> The district court also dismissed as untimely Blair's claim three, that his appellate counsel should not have been appointed to represent him due to conflict of interest. Before trial, the Washoe County Public Defender was removed as counsel due to conflict. After trial, the Public Defender was appointed to represent Blair on appeal. We conclude the district court did not err in ruling that Blair failed to show good cause and prejudice. Although good cause may be shown where the factual or legal basis for a claim was unavailable during the statutory time period, [footnote 10] good cause does not exist when the claim was "reasonably available to the petitioner during the statutory time period." [Footnote 11.] Here, the order dismissing the Public Defender was part of the court record, and Blair knew or had the opportunity to learn who was representing him at trial and on appeal. He also had the opportunity to determine what, if any, conflict existed at the time of his direct appeal. Thus this claim was reasonably available to Blair during the statutory time period, and his failure to discover it does not constitute good cause for his failure to raise it in a timely fashion. Resort to postconviction counsel's alleged ineffectiveness is unavailing, since Blair did not have the right to effective assistance of postconviction Because the relevant inquiry is whether the rule was well-established or consistently applied "at the time of [the] alleged default to bar federal review," cases decided after the purported procedural default normally should normally not be considered. See Lambright, 241 F.3d at 1203, n. 2. counsel. [Footnote 12.] This court's order dismissing Blair's extraordinary writ petition and advising Blair that he could file a habeas petition in district court did not absolve Blair of the duty to do so in a timely fashion. Blair cites but fails to explain how the law-of-the-case doctrine would assist him in establishing good cause.

1        Footnote 10: <u>Pellegrini</u>, 117 Nev. at 886-87, 34 P.3d at 537.

2        Footnote 11: <u>See</u> <u>Hathaway v. State</u>, 119 Nev. 248, 253, 71 P.23d 503, 507 (2003).

3        Footnote 12: <u>See</u> <u>McKague</u>, 112 Nev. At 162, 912 P.2d at 257.

(Docket #103-27, Exhibit 88.)

On July 30, 2009, petitioner filed a motion for summary judgment as to ground four of the fourth amended petition. (Docket #125.) Despite the above language of the Nevada Supreme Court, petitioner argues that ground four is not procedurally defaulted. Noting that the Nevada Supreme Court cited *Hathaway* in analyzing good cause to excuse the untimeliness of his petition, petitioner argues that the respondents have not explained how a rule created 11 years after the alleged default is adequate to support a finding of procedural bar. Petitioner cites *Scott v. Schriro*, 567 F.3d 573, n. 7 (9th Cir. 2009), in which the court stated, "[b]ecause the relevant inquiry is whether the rule was well-established or consistently applied 'at the time of [the] alleged default to bar federal review,' cases decided after the purported procedural default normally should normally not be considered. *See Lambright*, 241 F.3d at 1203, n. 2."

In response, respondents argue that the statement from *Hathaway* quoted by the Nevada Supreme Court is not itself a procedural bar. This court must agree. The contest of the statement partially quoted by the Nevada Supreme Court is as follows:

> We take this opportunity to clarify our holding in *Harris*; an appeal deprivation claim is not good cause if that claim was <u>reasonably available to the petitioner during the statutory time period</u>. Thus, claims that counsel failed to inform the petitioner of the right to appeal or that the petitioner received misinformation about the right to appeal would be reasonably available to the petitioner within the statutory time period. Another claim that would be reasonably available to *254 the petitioner within the statutory time period is a claim that counsel refused to file an appeal after the petitioner requested an appeal where the petitioner did not believe that counsel had filed an appeal on his or her behalf.

*Hathaway*, 119 Nevada at 253-54 (emphasis added). This language is from a discussion of procedural default the United States Supreme Court in *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The relevant language is as follows:

> We think, then, that the question of cause for a procedural default does not

14

> turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim <u>was not reasonably available to counsel</u>, *see Reed v. Ross*, 468 U.S., at 16, 104 S.Ct., at 2910, or that "some interference by officials," *Brown v. Allen*, 344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469 (1953), made compliance impracticable, would constitute cause under this standard.

*Murray*, 477 U.S. at 488 (emphasis added). Respondent asserts, and petitioner does not dispute, that the Nevada Supreme Court first cited *Murray* for this proposition in *Passanisi v. Director, Dep't Prisons*, 105 Nev. 63, 769 P.2d 72 (1989).

This court finds that it is clear from the language in the order of the Nevada district court dismissing petitioner's second petition for writ of habeas corpus that the district court relied on NRS 34.726 in finding petitioner's claims to be procedurally barred. As set forth above, this dismissal was affirmed by the Nevada Supreme Court.

Petitioner contends that he can show good cause to overcome a timeliness procedural bar in this instance, arguing that "the fact" that appellate counsel labored under an actual conflict of interest constitutes good cause. Petitioner misses the mark. The issue of petitioner's deprivation of effective counsel on direct appeal was defaulted when it was not raised in petitioner's appeal of the denial of his first state postconviction habeas corpus petition. Petitioner was not entitled to effective assistance of counsel in his postconviction proceeding and appellate counsel's alleged conflict of interest in a prior could not have dictated what claims petitioner raised in the postconviction proceeding. This is not a case in which a claim was defaulted in a proceeding wherein the petitioner was represented by counsel with an alleged defect, such as was true in *Jamison v. Lockhart*, 975 F.2d 1377 (8th Cir. 1992) (petitioner argued that alleged conflict of interest was cause of default of claim). *See also, Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000) (noting that there is no constitutional right to an attorney in state post-conviction proceedings, the court held that, "any ineffectiveness of Manning's attorney in the post-conviction process is not considered cause for the purposes of excusing the procedural default at

that stage"). The court finds, therefore, that this ground is procedurally barred and that petitioner has not shown cause and prejudice to overcome that bar.[1]

Ground Six

In ground six, petitioner contends that destruction of exculpatory evidence violated his right to due process under the Sixth and Fourteenth Amendments. Ground six correlates to ground five of petitioner's second state post-conviction petition. (Docket #103-3, Exhibit 73.) The Nevada Supreme Court addressed this issue as follows:

> The district court also dismissed as untimely Blair's claim five, that the State improperly destroyed exculpatory fingerprint evidence. Blair claims that he only recently discovered that this evidence was destroyed in approximately 2000 and therefore could not timely file this claim. A petitioner learning of a claim that was not available to him during the statutory period must file his petition raising that claim within a reasonable time of learning of it. [Footnote 13.] Blair's counsel learned of the destruction in 2001 and filed a federal habeas petition raising this claim in March 2004, but Blair did not file this claim in a state habeas petition until June 2005. This delay was not reasonable. Moreover, Blair has not explained how he was prejudiced by the destruction of evidence. Accordingly, we conclude the district court did not err in dismissing this claim.
>
> Footnote 13: See, e.g., Hathaway, 119 Nev. at 254-55, 71 P.3d at 507 - 08.

(Docket #103-27, Exhibit 88, p. 5.)(Citations omitted.)

Petitioner contends that the Nevada Supreme Court applied a different standard than did the Nevada District Court in determining that this ground for relief was procedurally barred. He argues that this demonstrates that the timeliness procedural bar is not the kind of clear, consistently applied rule which will bar federal review. This contention is unavailing as the status of NRS 34.726 - - the timeliness bar applied in this case - - as an independent and adequate state ground for finding procedural default is well-established. *Loveland v. Hatcher*, 231 F.3d 640, 642 (9th Cir. 2000). Further, as noted by the Nevada Supreme Court, petitioner provides no explanation as to how he was prejudiced by the destruction of the evidence. The court concludes, therefore, that this ground for relief is procedurally barred and

---

[1] Petitioner's motion for summary judgment on ground four was filed on July 30, 2009, long after his reply to respondents' answer was filed on August 22, 2008. (Docket #116.) As respondents argue, the motion for summary judgment alleges facts beyond that alleged in the petition. The court will not endorse this unauthorized attempt to amend the pleadings.

petitioner has not made the requisite showing to overcome that bar.

Ground Seven

In ground seven, petitioner contends that the prosecution failed to disclose police reports containing critical information relevant to the identification of the perpetrator and thereby violated petitioner's due process rights under the Sixth and Fourteenth Amendments. Petitioner claims both that the prosecutor, in violation of *Brady*, failed to disclose certain police reports to trial counsel, and that the prosecutor failed to disclose the results of a polygraph examination. Ground seven correlates to ground six of petitioner's second state post-conviction petition. (Docket #103-3, Exhibit 73.) In addressing this ground for relief, the Nevada Supreme Court held as follows:

> The district court also dismissed as untimely Blair's claim six, that the State failed to disclose the results of Blair's polygraph examination and statements by the victim describing her assailant. We conclude that the district court did not err. These claims were reasonably available within the statutory period. Blair knew he had been given a polygraph examination and could have requested the results at any time. The State's disclosure of witness statements to the defense was the subject of pretrial motions. Any discrepancy between the victim's initial description of the suspect to police and her and the detective's trial testimony was subject to exploration on cross-examination at trial. Accordingly, we conclude the district court did not err in dismissing these claims as untimely.

(Docket #103-27, Exhibit 88, p. 6-7.)

Petitioner argues that this claim is not ripe, and therefore cannot be procedurally barred. He claims that the claim will not be ripe until he receives the evidence which exists, and that the reasonable time for presenting this claim will begin to run once the missing information is disclosed. The court rejects this argument, because the very contention is that the information was not disclosed. Petitioner has demonstrated neither good cause or prejudice to excuse his procedural default of this claim. The court concludes, therefore, that it provides no basis for habeas corpus relief.

Ground Nine

In ground nine, petitioner contends that insufficient evidence was presented at trial to support his convictions of burglary, sexual assault or attempted sexual assault. Petitioner argues that there was no physical evidence connecting him to the crime, and that the physical evidence demonstrated that petitioner was not the assailant.

17

In addressing this issue on direct appeal, the Nevada Supreme Court held as follows:

> Appellant's sole contention on appeal is that the evidence presented at trial was insufficient to support the jury's finding of guilt. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. See Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980). In particular, we note that appellant admitted to burglarizing cars in the victim's neighborhood, and the victim's assailant gained entry into the victim's house by using a key taken from the victim's car. Further, appellant matched the general description given by the victim of her assailant, told inconsistent stories about his whereabouts on the night of the crimes, made inculpatory statements to police officers and attempted to procure false testimony to support his alibi defense. Finally, appellant had a deformity of his penis similar to the deformity noted by the victim.

(Docket #79, Exhibit 34.)

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. *Id*. at 324 n. 16. The Nevada Supreme Court applied this standard in analyzing petitioner's claim, and found that a rational trier of fact could find sufficient evidence to establish guilt beyond a reasonable doubt. This court finds that petitioner's argument regarding the existence of evidence which did not support a finding of guilt does not establish that the Nevada Supreme Court's ruling on the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The court finds that this claim provides no basis for habeas corpus relief.

**IT IS THEREFORE ORDERED** that petitioner's motion for leave to conduct discovery (Docket #119) is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner's motion for summary judgment on ground four (Docket #125) is **DENIED.**

1     **IT IS FURTHER ORDERED** that petitioner's motion for a hearing (Docket #128) is
2 **DENIED.**
3     **IT IS FURTHER ORDERED** that this petition for writ of habeas corpus is **DENIED.**
4 The Clerk of the Court is directed to enter judgment for respondents and to close this case.
5     DATED this 17th day of December, 2009.

*/s/ Howard D. McKibben*
_____
SENIOR UNITED STATES DISTRICT JUDGE